**Kevin WALLACE, Plaintiff–Appellant,**

v.

**TESORO CORPORATION, Defendant–Appellee.**

No. 13–51010.

United States Court of Appeals, Fifth Circuit.

July 31, 2015.

---

Richard Randolph Renner, Kalijarvi, Chuzi, Newman & Fitch, P.C., Washington, DC, Alexander Lawrence Katzman, Katzman & Katzman, Christopher John McKinney, McKinney Law Firm, San Antonio, TX, for Plaintiff–Appellant.

Michael Delikat, Renee Phillips, Orrick, Herrington & Sutcliffe, L.L.P., New York, NY, Wallace Bernard Jefferson, Alexander Dubose Jefferson & Townsend, L.L.P., Austin, TX, Robert A. Valadez, Shelton & Valadez, San Antonio, TX, for Defendant–Appellee.

Radha Ranjani Vishnuvajjala, Esq., U.S. Department of Labor, Office of the Solicitor, Washington, DC, for Thomas E. Perez, Secretary, Department of Labor.

Before SMITH, PRADO, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Kevin Wallace appeals the dismissal of his retaliation claim against Tesoro Corporation ("Tesoro"). He contends that Tesoro terminated his employment for engaging in protected activity under the Sarbanes–Oxley Act of 2002 ("SOX") in violation of 18 U.S.C. § 1514A. The district court held in part that Wallace had failed to state a claim and in part that some of the allegations had not been properly exhausted before the Occupational Safety and Health Administration ("OSHA"). Wallace did not satisfy the applicable exhaustion requirement for some of his allegations and failed to state a claim for others, but because he stated a claim relating to his investigation of Tesoro's accounting practices, we affirm in part and reverse in part and remand.

I.

These facts are taken from Wallace's second amended complaint, with the exception of the facts relating to his activities related to suspected wire fraud, which are in the third amended complaint [1]: Wallace was the Vice President of Pricing and Commercial Analysis at Tesoro. He contends that before he was fired in March 2010, he engaged in protected activity relating to four categories of suspected unlawful activity: Tesoro counted taxes as revenues on certain financial forms, including the company's Forms 10–K and 10–Q filings, even though that money was collected just for transmittal to the Treasury;

Tesoro had some sort of side agreement in Idaho Falls, Idaho, that would violate antitrust laws; Wallace disclosed, on two annual certificates of compliance, that he had observed retaliation for raising concerns about violations of the Tesoro Code of Conduct; and Tesoro was engaged in wire fraud by providing some customers advance notice of price changes and by giving after-the-fact discounts to certain customers.

On the claim of booking taxes as revenue, Wallace states that, at an unspecified time in 2009, he began investigating a discrepancy between Tesoro's financial forecasts and cash performance. He discovered that Tesoro was reporting taxes as revenue, making some segments of the company look more profitable than they really were. Wallace brought the problem to the attention of his supervisor, Claude Moreau; the Vice President of Internal Audit, Tracy Jackson; and the Director of Commercial Accounting, Greg Belisle.

Belisle told Wallace that the system would no longer book taxes as revenue as of April 2010. At some later time, Wallace learned that Moreau had dissuaded Belisle from implementing that change. Wallace also met with Moreau a week before his termination and told him the results of a study that included the practice of booking taxes as revenue.

For the Idaho Falls issue, Wallace became aware in January or February 2010 of behavior he suspected was pricing collusion. John Moore, the Vice President of Wholesale, informed Wallace that he believed there was a "side agreement" that violated antitrust laws. Tesoro terminated

1. The district court dismissed the second amended complaint except for its allegations that Wallace engaged in protected activity related to a belief in wire fraud, for which Wallace was permitted to file the third amended complaint. We do not look to the allegations in the third amended complaint except to the extent the district court permitted the amendment and considered it.

Wallace before he could investigate the issue and report his findings.

The third practice that Wallace identified was his self-reporting of retaliation. Specifically, he was responsible every year for filling out an Annual Certificate of Compliance that asked a litany of questions designed to ensure compliance with SOX and antitrust laws, including this question: "Are you aware of any retaliation for raising a concern, in good faith, about anything that might violate our Code?" Wallace checked "yes" on the 2008 and 2009 Certificates, which were submitted in February 2009 and March 2010.

Finally, Tesoro engaged in two practices that Wallace believed to be fraudulent. The "price signaling" was a practice by which Tesoro would represent to customers that they would all receive information regarding price changes at the same time; Tesoro would actually give some customers advance notice of pricing changes, giving them an advantage over competitors in buying fuel. The "inconsistent discounts" were a practice by which Tesoro would represent to customers that they would all be treated the same on price, but it would give some of them a discount after the fact. Wallace first received reports of the inconsistent discounts in 2008 reports from subordinate employees, and in the summer of 2009 he met with a group who discussed the illegality of the inconsistent discounts. Wallace informed Charles Parrish, Tesoro's General Counsel, of the violations before his termination.[2]

Wallace was fired on March 12, 2010. He contends that his activities relating to the foregoing suspected wrongful activities motivated the termination.

## II.

Wallace filed a complaint against Tesoro with OSHA in May 2010, stating that Tesoro had retaliated against him for engaging in protected activity: marking "yes" to the retaliation questions on the certificates of compliance, investigating "the continuing anti-trust issues in Idaho Falls," and "discovering taxes collected by Tesoro were being booked as revenue." The complaint did not reference price signaling, inconsistent discounts, or wire fraud.

OSHA dismissed the complaint in October 2010. It determined that Wallace's protected activity did not contribute to his termination. The Administrative Review Board ("ARB") had not issued a final decision on Wallace's case within 180 days of his filing it, so he sued in February 2011.

After some proceedings not relevant to this appeal, Wallace filed a second amended complaint alleging essentially four categories of protected activity: investigating and reporting the booking of taxes as revenues, investigating the Idaho Falls issue, identifying retaliation on the certificates of compliance, and investigating and reporting suspected wire fraud from inconsistent discounts and price signaling. Tesoro moved to dismiss, and the magistrate judge ("MJ") recommended granting the motion as to the first three categories of protected activity and allowing amendment to cure deficiencies related to the wire-fraud-based claim.[3]

---

2. The complaint recounts numerous meetings and communications with people at Tesoro, but it frequently lacks any reference to the date or subject matter. Because these allegations are not exhausted, it is not necessary to determine which communications actually referenced the suspected fraudulent activities or when they occurred.

3. The MJ initially recommended that Wallace had to plead that claim with particularity in accordance with Federal Rule of Civil Procedure Rule 9(b). As we will explain, that would be legal error, but the district court did not dismiss any claim based on that recommendation.

In addition to filing objections, Wallace filed a third amended complaint. Tesoro moved to dismiss it, raising for the first time the argument that the wire-fraud-based claims had not been presented in the OSHA complaint and were therefore unexhausted. The MJ recommended dismissing that complaint based on the failure to exhaust, to which Wallace objected.

The district court accepted the MJ's recommendations, dismissing the first three categories of protected activity from the second amended complaint. The court accepted the MJ's reasoning: Wallace was objectively unreasonable in believing that booking taxes as revenue violated SEC rules; he had not engaged in protected activity relating to Idaho Falls because he had not reported the pricing issue to Tesoro before his termination (meaning he also could not show a causal link between Idaho Falls and his termination); his 2008 Certificate disavowed his having experienced retaliation, so it did not show a reasonable belief that he had experienced retaliation; and the 2009 Certificate was not protected activity because it contained no information other than a checked box and a refusal to say more except in private. The district court accepted the MJ's recommendation to dismiss the wire-fraud-based portions of the third amended complaint, which was the only extant claim of protected activity, because that alleged protected activity was outside the scope of the OSHA complaint.

Wallace contends that the dismissal was improper. As we explain, SOX has an exhaustion requirement, and the district court correctly concluded that Wallace's wire-fraud-based protected activity was outside the scope of the OSHA complaint or any investigation it would reasonably prompt. Wallace does not question the district court's conclusions that his Idaho Falls-related activity was not protected activity and that Tesoro was unaware of any of Wallace's actions relating to Idaho Falls, and he has therefore abandoned any challenge to them. Wallace did not object to the MJ's recommended dismissal of the 2008 Certificate and has not challenged the reason given for dismissing the 2009 Certificate.

The district court erred, however, in dismissing Wallace's claim regarding his investigating Tesoro's allegedly booking taxes as revenue. He has adequately pleaded that he engaged in protected activity relating to that practice.

## III.

SOX protects employees from retaliation for engaging in protected activity, which is

> any lawful act done by the employee to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . .

18 U.S.C. § 1514A(a). Essentially, the employee has to provide information or assist in an investigation that he reasonably believes relates to one or more of six categories of laws and regulations: four specific types of fraud, a federal offense that relates to fraud against shareholders, or a rule or regulation of the SEC.

An employee's reasonable belief that conduct violates one of those six categories must be evaluated under both an objective and a subjective standard. *Allen v. Admin. Review Bd.*, 514 F.3d 468, 477 (5th Cir.2008). The objective standard examines whether the belief would be held by "a reasonable person in the same factual circumstances with the same training

and experience as the aggrieved employee." *Id.*

A person averring retaliation in violation of SOX must first file a complaint with the Secretary of Labor. 18 U.S.C. § 1514A(b)(1)(A). If 180 days pass from the filing of that complaint without a final decision, the complainant can sue. § 1514A(b)(1)(B); *Lawson v. FMR LLC,* —— U.S. ——, 134 S.Ct. 1158, 1163, 188 L.Ed.2d 158 (2014).

■ We review *de novo* a dismissal for failure to state a claim. *Harris v. Boyd Tunica, Inc.,* 628 F.3d 237, 240 (5th Cir. 2010). We accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Id.*

### IV.

It is undisputed that Wallace was not required to wait more than 180 days for OSHA to resolve his administrative complaint before he could sue. *See* 18 U.S.C. § 1514(a); *Lawson v. FMR LLC,* —— U.S. ——, 134 S.Ct. 1158, 1163, 188 L.Ed.2d 158 (2014). We still must determine, however, whether the OSHA complaint was sufficient to allow the district-court complaint to contain the allegations of wire-fraud-based retaliation. To do that, we must decide whether SOX-retaliation lawsuits are limited in scope by the administrative complaint and whether the reach of this lawsuit exceeds what is allowed by application of that rule. We use "exhaustion" as shorthand to refer to this specific concept.

Wallace and Tesoro told the district court that the correct exhaustion standard is the one we apply in Title VII cases, laid out in *Thomas v. Texas Department of Criminal Justice,* 220 F.3d 389, 395 (5th Cir.2000), which limits a Title VII complaint "to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." The court held that Wallace did not satisfy the *Thomas* standard for his contention that he had engaged in protected activity related to suspected wire fraud.

Wallace asserts that SOX contains no exhaustion requirement and that, to the contrary, merely filing a charge with OSHA that triggers an investigation is enough to permit a future district-court filing that is not limited by the scope of that charge. Wallace's theory is partly textual: Section 1514A allows a plaintiff to bring an action "for de novo review in the appropriate district court." 18 U.S.C. § 1514A(b)(1)(B). According to Wallace, "de novo review" means the district court must act without regard to prior proceedings. That would attach a novel definition to the phrase "de novo review," which ordinarily refers only to whether the reviewing court gives deference to the decisions of the lower tribunal. *See* BLACK'S LAW DICTIONARY 976 (10th ed.2014). The guarantee of de novo review prevents deference to OSHA's findings and conclusions if the employee subsequently sues, but it is not a complete redaction of the administrative proceeding. There is no reason to think that, in enacting SOX, Congress varied from the ordinary meaning of "de novo review." [4]

Nor is OSHA's low threshold for filing an administrative complaint inconsistent with an exhaustion requirement. Wallace points out that OSHA does not require its complaints to meet the same standards applied to federal-court complaints, mak-

---

4. Because the distinction is not important to the question of exhaustion, we need not answer whether "de novo review" entitles the plaintiff to less than a full trial on the merits accompanied by the introduction of new evidence. *See Wilson v. C.I.R.,* 705 F.3d 980, 1004–05 (9th Cir.2013) (Bybee, J., dissenting) (distinguishing between a trial de novo and de novo review); *United States v. Wilson,* 864 F.2d 1219, 1221 (5th Cir.1989) (citing *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)).

ing the administrative process incongruous with an exhaustion requirement. Wallace misapprehends OSHA's standards.

Although OSHA agency has low requirements for filing a complaint,, that is sufficient only for purposes of triggering action by that agency. Department of Labor regulations still require a complaint to "allege the existence of facts and evidence to make a prima facie showing," including facts and evidence showing that "[t]he employee engaged in protected activity." 29 C.F.R. § 1980.104(e).[5] As the Secretary of Labor states in his amicus curiae brief, Wallace, in his OSHA complaint, "was required to identify the conduct by his employer that he believes was illegal." An exhaustion requirement is consistent with SOX's administrative-enforcement mechanisms.[6]

■ The reason for the exhaustion requirement in Title VII applies with equal force to SOX. An administrative charge "is not filed as a preliminary to a lawsuit." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir.1970). Instead, its purpose is to trigger the agency's defined investigation and conciliation procedures. Id. It would thwart the administrative scheme to allow plaintiffs to sue on claims that the agency never had the chance to investigate and attempt to resolve. McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273 (5th Cir.2008). Likewise, the exhaustion requirement should go only as far

as is necessary to give the agency its initial crack at the case; rather than focusing only on the four corners of the facts included in the original agency complaint, the Thomas standard extends the scope of the resulting action to the extent of the investigation that the agency complaint can reasonably be expected to spawn. Sanchez, 431 F.2d at 466; McClain, 519 F.3d at 273.

■ We therefore apply the same exhaustion standard in SOX-retaliation cases: The scope of a judicial complaint is limited to the sweep of the OSHA investigation that can reasonably be expected to ensue from the administrative complaint. In applying the same standard that we apply to Title VII cases, we join the only other circuit to have directly addressed the issue. The Fourth Circuit analyzed the scope of SOX exhaustion under the same framework it applies to Title VII complaints. "[L]itigation may encompass claims 'reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint.' "[7]

■ Wallace maintains that, even if SOX has an exhaustion requirement, he satisfied it. His entire reasoning on the point, however, is a restatement of his assertion that merely filing a claim that meets OSHA's technical requirements will exhaust an employee's claims. The only time he states that his OSHA complaint

---

**5.** This requirement, located then at § 1980.104(b), existed when Wallace filed his complaint. Even though the regulation states that the complaint, "supplemented as appropriate by interviews of the complainant," must make out the case, our exhaustion analysis is not changed by the fact that OSHA did not interview Wallace. Nothing entitles Wallace to an interview and the chance to supplement his complaint in that way; a regulation treating interview statements in a particular manner does not implicitly mean that an interview must occur.

**6.** The Secretary's amicus brief agrees that SOX has an exhaustion requirement, stating that "a complainant's subsequent district court complaint may contain only those claims that were filed with the agency."

**7.** Jones v. Southpeak Interactive Corp. of Del., 777 F.3d 658, 669 (4th Cir.2015) (quoting Evans v. Techs. Applic. & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996)).

would result in an investigation that would reveal his wire-fraud concerns is in his reply brief;[8] he contends that, because the OSHA complaint referenced an "oral agreement with a customer" to match prices (the Idaho Falls antitrust matter), it sufficiently raised the wire-fraud issue. The OSHA complaint actually referenced only "an apparent oral agreement with a customer to match prices with a particular station," which Wallace stated resulted in "anti-trust issues." This is distinct from the price signaling and inconsistent discounts that Wallace alleges led to his protected activity regarding suspected wire fraud.[9]

The OSHA investigation prompted by this complaint could not reasonably be expected to extend to Wallace's belief that Tesoro was committing wire fraud through other practices (price signaling and inconsistent discounts) and the actions Wallace took to investigate and report those actions.[10] We have similarly held that an EEOC complaint claiming sex discrimination would not reasonably lead to an investigation that would encompass race discrimination as a motivation for the same adverse action.[11] By failing entirely to reference a distinct category of protected activity in his OSHA complaint, Wallace did not file a complaint whose investigation would reach that activity.

One novel notion advanced by Wallace is that his amended complaint related back to the original OSHA complaint, rendering exhausted the contents of his district-court complaint. Both administrative pleadings and district-court pleadings can be amended, and in some circumstances an amendment may relate back. FED.R.CIV.P. 15(c). But Wallace has not shown any legal mechanism by which an amendment to a court complaint relates back to the time of the administrative complaint, nor how such a relation-back rule would render exhausted those claims that were not presented to the agency. Because SOX requires claims to be exhausted, and Wallace has failed to show that OSHA's investigation reasonably would reach his wire-fraud-related investigation and reporting, the district court did not err in dismissing that portion of the complaint.[12]

---

8. "[T]his Court will not ordinarily consider arguments raised for the first time in a reply brief." *United States v. Aguirre–Villa,* 460 F.3d 681, 683 (5th Cir.2006). For the sake of thoroughness and because it does not change the result, we will address this issue.

9. Although the exact nature of the Idaho Falls issue has remained murky, the timeline likewise shows the Idaho Falls concern was distinct from the inconsistent discounts and price signaling. Wallace contends that he found out about the Idaho Falls issue only at the beginning of 2010 but knew about inconsistent discounts and price signaling at least by 2008.

10. In his brief, the Secretary contends that Wallace's OSHA complaint referenced his belief of wire fraud in stating that he had been asked to participate in altering Tesoro's "publication practices of posting the Shell Wholesale branded price." The third amended complaint, however, makes plain that Wallace was referring to an allegedly collusive agreement with a *competitor* to stop publishing its wholesale price with a petroleum-pricing clearinghouse, an accusation unrelated to the activities Wallace now groups as price-signaling and inconsistent discounts. Wallace stated that he thought the request would be illegal because it would be a collusive agreement with a competitor that would violate the rules of the Commodities Futures Trading Commission. It would be too charitable a view of OSHA investigations to say that, because Wallace's complaint referenced a type of collusion, the investigation would reasonably encompass anything else that might arguably be labeled "collusion."

11. *Thomas,* 220 F.3d at 394–95; *see also Mack v. John L. Wortham & Son, L.P.,* 541 Fed.Appx. 348, 358 (5th Cir.2013).

12. We need not resolve whether the SOX exhaustion requirement is jurisdictional because

## V.

 Wallace fails to address the grounds on which the district court dismissed the portions of his complaint relating to Idaho Falls. The MJ's report, adopted by the district court, recommended dismissal because the complaint stated that Wallace had not reported the "pricing issue" to Tesoro; there could not be a causal link between his protected activity on this point (if he engaged in any) and his termination because he was fired before Tesoro knew of the investigation. Wallace contested that holding in the district court but not now.

Taking a different tack, Wallace contends that any dismissal of claimed protected activity is improper at the Federal Rule of Civil Procedure 12(b)(6) stage and that "the relevance of the Idaho Falls antitrust concerns ... should be determined at trial when the court can consider the evidence in the full context of the case." That statement is made as a part of a larger discussion of the rules of evidence. The contention misses its mark, however, because it misconstrues the district court's action. Rather than evaluating relevance and other admissibility concerns, the court determined that, even if Wallace's asserted facts about his actions regarding Idaho Falls were true, he had failed to state a claim as to those actions because his facts ruled out a causal link, a necessary element of SOX retaliation. Wallace could have challenged that holding, but by failing to address it on appeal he has abandoned the issue. *See United States v. Rios–*

*Espinoza,* 591 F.3d 758, 760 n. 1 (5th Cir.2009).

## VI.

When the MJ recommended dismissing the claims relating to the certificates, Wallace objected only as to the 2009 Certificate and not to the MJ's recommended holding that the 2008 Certificate was not protected activity. Because Wallace failed to object to the MJ's report on this point, that issue on appeal is reviewed only for plain error.[13] And because Wallace has not shown how any error would satisfy the specific and exacting requirements of plain-error review, he has failed to meet his burden.

As for the 2009 Certificate, Wallace did not contest the MJ's proposed holding that it was not protected activity. Wallace responded only on the causal element, contending that it was very suspicious that he was terminated the same day that he submitted the certificate. But he now contends that the certificate was protected as participation in proceedings under § 1514A(a)(2), which shields from retaliation "any lawful act done by the employee ... to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed." We decline to determine whether a company's internal procedures for monitoring and addressing employee concerns would be proceedings under § 1514A(a)(2). It would not have been obvious to the district court, at the time, that "proceeding" was so defined.[14]

that issue has not been briefed and is not squarely before this court.

**13.** *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir.1996) (en banc), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1); *Shelby v. City of El Paso, Tex.,* 577 Fed.Appx. 327, 331 (5th Cir.2014) ("Because [the plaintiff] failed to object to the

Report and Recommendation with this argument, our review is only for plain error.").

**14.** *See, e.g.,* BLACK's LAW DICTIONARY 1398 (10th ed.2014); Marc I. Steinberg & Seth A. Kaufman, *Minimizing Corporate Liability Exposure When the Whistle Blows in the Post* Sarbanes–Oxley *Era,* 30 J. CORP. L. 445, 451–52 (2005).

## VII.

■ Wallace challenges the holding that he had not engaged in protected activity in reporting that Tesoro was booking taxes as revenue. He advances two contentions: The district court relied on an incorrect legal standard and erred in holding that his belief was not reasonable. The first contention fails because the court did not base its dismissal on the allegedly erroneous standard. The court did err, however, in holding as a matter of law, at the Rule 12(b)(6) stage, that Wallace had not pleaded an objectively reasonable belief of a SOX violation.

■ Wallace contends the district court erroneously required that protected communications "definitively and specifically" relate to one of the six enumerated SOX categories. The ARB at one time interpreted SOX retaliation protections to attach only if the employee's communications related "definitively and specifically to the subject matter of the particular statute under which protection is afforded." [15] We adopted that requirement in *Allen*, 514 F.3d at 476–77. The ARB has since reconsidered the issue and interpreted SOX not to require that the communication definitively and specifically relate to one of the six SOX categories. [16] We have not reconsidered the standard, although we have quoted with approval *Sylvester's* statement that SOX's "critical focus is on whether the employee *reported conduct* that he or she *reasonably believes* constituted a violation of federal law." *Villanueva v. U.S. Dep't of Labor*, 743 F.3d 103, 109 (5th Cir.2014).

■ We need not decide how that standard applies to this case because the district court did not base the dismissal on a failure to meet it. Though the MJ quoted the phrase "definitively and specifically" in giving the background law on protected activity, he recommended dismissal because Wallace was not objectively reasonable in believing that Tesoro had violated SEC rules (one of the six enumerated categories) just because another employee had told Wallace that booking taxes as revenues violated generally accepted accounting principles ("GAAP"). An objectively reasonable belief is necessary for an employee to have engaged in protected activity. *See Allen*, 514 F.3d at 477. Because the district court dismissed Wallace's complaint based on this requirement, we do not decide whether his communications to Tesoro needed to relate definitively and specifically to one of the six SOX categories.

That objective-reasonableness standard is the second ground on which Wallace challenges his dismissal; he contends that the district court erred when it held, on a motion to dismiss, that his belief was objectively unreasonable. The court first found that Wallace was an accounting expert. It then held that his belief in wrongdoing was not objectively reasonable because he did not know of a specific SEC rule that the practice violated. An accounting expert, the court said, "should have been aware of that specific requirement."

■ The court should not have dismissed on this ground. There is no doubt that SOX protects only those employees who reasonably believed they were investigating or reporting a violation of one of the six SOX categories. Wallace has sufficiently pleaded, however, that he thought the accounting practice violated SEC rules. The objective reasonableness of an em-

---

**15.** *Platone v. Flyi, Inc.*, ARB Case No. 04–154, 2006 WL 3246910, at *8 (ARB Sept. 29, 2006) (quotation omitted).

**16.** *Sylvester v. Parexel Int'l LLC*, ARB No. 07–123, 2011 WL 2517148, at *14–15 (ARB May 25, 2011).

ployee's belief under SOX cannot be resolved as a matter of law "if there is a genuine issue of material fact." *Id.* Wallace has adequately alleged that he believed the practice at least violated SEC rules. The basis for that belief in this case, including the level and role of Wallace's accounting expertise and how that should weigh against him, are grounded in factual disputes that cannot be resolved at this stage of the case.

Tesoro offers several alternative grounds for affirming the dismissal, but none has merit. Wallace was not required to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b). Tesoro has not shown that it disclosed all of the taxes Wallace alleges were improperly recorded. If Wallace was required to plead a belief that Tesoro acted with a deceptive mental state, he satisfied that requirement. And Tesoro has not shown that Wallace discovered and reported the reach of the accounting practice too late to have engaged in protected activity.

### A.

■ The parties dispute whether the plaintiff in a SOX retaliation suit must plead fraud with particularity in accordance with Rule 9(b). Although the MJ at one point recommended such a holding, the district court did not dismiss any part of the complaint for failing to plead with particularity. Although Tesoro maintains that the dismissal can be affirmed for failing to satisfy Rule 9(b), it is plain from the rule's text that it does not apply to this retaliation suit.

■ Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Tesoro urges that a plaintiff claiming retaliation under § 1514A(a)(1) for reporting suspected fraud must therefore plead the factual circumstances of that fraud with particularity. What that overlooks is that § 1514A(a)(1) protects an employee who "reasonably believes" that conduct violates an enumerated statute. An employee who assists in an investigation regarding conduct he reasonably believes to be wire fraud is protected from adverse action for that assistance, even if the conduct turns out not to be fraudulent. *See Allen,* 514 F.3d at 477.

■ An employee's reasonable belief is determined by an objective and subjective inquiry examining whether he actually believed that fraud was taking place and whether a reasonable person, in the same situation and with the same training, would have reached a like conclusion. *Id.* There is no reason to think that the information necessary for an employee to form a reasonable belief of fraud is the same information a complaint must include to survive Rule 9(b).

■ The requirements of Rule 9(b) show how poorly it would work as a benchmark for reasonable belief that fraud is occurring. "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir.2003). But an employee who is providing information about potential fraud or assisting in a nascent fraud investigation might not know who is making the false representations or what that person is obtaining by the fraud; indeed, that may be the point of the investigation. Leaving those employees unprotected would have grave consequences for the statutory scheme of employee protection embodied in § 1514A and would do so in a way that appears completely unrelated to whether a belief actually is reasonable.

Tesoro relies on *Lone Star Ladies Investment Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir.2001), for the proposition that allegations of fraud must be stated with particularity even if fraud is not an element of the claim. That is true, but it does not help Tesoro's position. As we stated there, an inadequately pleaded allegation of fraud is merely disregarded; the complaint is dismissed only if, in the absence of that inadequate allegation, no claim has been stated. *Id.* at 368.

Nothing in SOX or Rule 9(b) suggests that a reasonable belief of fraud must be pleaded with particularity. To say otherwise not only would contravene the statutory text and the regime of notice pleading but also would alter the substantive requirements of a reasonable belief in a way completely divorced from caselaw and the goals of SOX.

### B.

 Tesoro contends that Wallace could not have reasonably believed that booking taxes as revenue was fraud or violated SEC rules because Tesoro disclosed the practice on the reports it filed with the SEC. The complaint adequately alleges, however, that Wallace believed he was reporting tax-revenue accounting practices beyond those covered by Tesoro's SEC disclosures.

Attached to Tesoro's motion to dismiss the second amended complaint were sections of its 2009 and 2010 Forms 10–K. Each form stated that its revenue figures included "excise taxes collected by [Tesoro's] retail segment" and "[f]ederal excise and state motor fuel taxes, which are remitted to governmental agencies." The second amended complaint, however, stated that "sales, use, excise, and other taxes" were being reported as revenues. When he objected to the MJ's recommendation that Tesoro had disclosed its practices, Wallace stated that he had "reported the incorrect and inconsistent treatment of state, county, and city sales taxes; environmental and manufacturing taxes; and other assessments that were being billed to customers but not included in the costs of goods sold." Wallace contends that Tesoro's disclosure of its treatment of excise taxes did not disclose its similar treatment of other taxes.

Wallace has plausibly alleged that he reasonably believed his investigation and reporting of tax-accounting practices reached some that were not disclosed on the SEC forms in the record. Tesoro has not shown that it disclosed all of the practices relating to Wallace's potentially protected activity, so it cannot establish, as a matter of law in this early posture, that the disclosures in the record prevent Wallace from having held a reasonable belief of fraud or SEC violations.

### C.

 Relatedly, Tesoro asserts that Wallace did not plead a reasonable belief that it had a deceptive mental state when engaging in its alleged accounting and reporting practices. In *Allen*, 514 F.3d at 479–80, we held that an employee's activity relating to the sixth SOX category ("any provision of Federal law relating to fraud against shareholders") was protected only if the employee "reasonably believe[d] that his or her employer acted with a mental state embracing intent to deceive, manipulate, or defraud its shareholders." We expressly reserved the question whether the employee must have had a like belief for the first five SOX categories. *Id.* at 480 & n. 8. Wallace appears to be claiming protected activity relating to the fifth and sixth categories, implicating the question left unanswered in *Allen*.

We need not resolve that issue, however, because Wallace would have adequately pleaded a belief that Tesoro acted with the

requisite mental state. As discussed above, Wallace pleaded that he investigated and reported nondisclosed booking of taxes as revenues, so the SEC disclosures in the record do not necessarily preclude a reasonable belief of an intent to deceive. Wallace also pleaded that he took steps to notify Tesoro personnel of the problem, and he further asserted that he believed the non-disclosure of the practice was intentional because it improved stock analysts' reporting on Tesoro and led to higher compensation for Tesoro's Senior Vice President of Marketing. Wallace has sufficiently pleaded that he believed Tesoro's alleged misrepresentations were made with a deceptive mental state.

### D.

■ Tesoro further contends that Wallace did not engage in protected activity because he did not report, before his termination, that his investigation had turned up fraudulent accounting practices in the "SEC-reported retail segment" and had only disclosed errors in "the non-reported Marketing segment." Specifically, in a post-termination letter to Steven Grapstein (head of Tesoro's audit committee), Wallace stated that, at the time of his termination, he "had discovered that the errors reached across to the reported external retail segment, but [he] had not yet informed [Tracy Jackson] of this finding due to [his] termination."

Wallace alleged in his complaint that Tesoro's accounting practices were overstating the profitability both of the external retail segment and of the unbranded marketing segment. Because he had not reported that the practice reached the retail segment before his termination, Tesoro

contends, Wallace could not have held a subjective belief at the time of his reporting that Tesoro was violating fraud laws or SEC rules. Neither party has made clear the import of Tesoro's corporate structure, the distinctions between Tesoro's retail and marketing segments, or the information reported about those segments to the SEC. Tesoro seems to assert that "the reported external retail segment" is the only locus of impropriety that could give rise to a reasonable suspicion of a SOX violation in this case. But without a more detailed explanation of Tesoro's structure and reports, we cannot reach that conclusion.[17]

The second amended complaint is sufficient to preclude dismissal on this ground. Wallace pleaded, albeit quite generally, that he informed Tesoro management of the accounting practice and that he believed it violated GAAP. His letter to Grapstein does not necessarily contradict his complaint because it shows only that he had not reported the extension of the accounting practice to one specific area, the reported external retail segment.

Even after multiple rounds of amendment, Wallace's complaint remains garbled, and we express no view on the ultimate merits. At this preliminary stage, however, Wallace has cleared the low hurdle of pleading a plausible case for relief. The district court erred only in dismissing the portion of the complaint alleging protected activity relating to the reporting of taxes as revenues.

The judgment of dismissal is therefore AFFIRMED in part, REVERSED in part,

17. For example, the SEC forms in the record state that Tesoro's reported revenues come from the company's "two operating segments, refining and retail." The same forms state that the refining section sells to unbranded marketers. Without more information, we cannot conclude that the external retail segment is the only segment Wallace alleged he knew was booking taxes as revenue, nor can we conclude that the retail segment is the only segment whose accounting practices would affect SEC filings.

and REMANDED for further proceedings as appropriate.