# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50927

United States Court of Appeals
Fifth Circuit

**FILED**
February 15, 2019

Lyle W. Cayce
Clerk

KEVIN WALLACE,

      Plaintiff - Appellant

v.

ANDEAVOR CORPORATION,

      Defendant - Appellee

Appeal from the United States District Court
for theWestern District of Texas

Before JONES, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

This suit concerns the federal Sarbanes-Oxley Act, which protects those who blow the whistle on their employer's failure to comply with Securities and Exchange Commission reporting requirements. The district court found that the employer's decision to fire the plaintiff was not prohibited retaliation and that the plaintiff did not have an objectively reasonable belief that a violation of reporting requirements had occurred. We AFFIRM.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Kevin Wallace worked for Tesoro Corporation from June 2004 until his termination in March 2010. In 2009 and 2010, Wallace was a Vice

No. 17-50927

President of Pricing and Commercial Analysis. Wallace reported to Claude Moreau, who reported to Everett Lewis. At some point in late 2009 or early 2010, Lewis tasked Wallace with investigating financial performance in various industry segments. Through the investigation, Wallace came to believe that Tesoro misunderstood the comparative profitability of certain regions. Wallace also determined that Tesoro improperly booked taxes as revenues in certain *internal* reporting channels.[1]

On February 8, 2010, Wallace sent an email to Moreau and Tracy Jackson, Tesoro's Vice President of Internal Audits, explaining that Pacific Northwest intracompany profit calculations were erroneous in part due to the accounting for taxes. Wallace wrote that "external retail could be ok because it is treated differently in the intracompany process." After sending that email, Wallace met with Jackson on either February 8 or 9. According to Wallace, Jackson was concerned that a footnote in Tesoro's SEC disclosures might have been incorrect.

On February 9, Wallace sent another email discussing Tesoro's practice of booking taxes as revenues and stated that he did not think "there is any chance that at the corporate level this is not properly accounted for." Inferences from Wallace's testimony could be drawn that after the February 9 email he changed his mind, became concerned that Tesoro did not properly account for sales taxes in Tesoro's SEC disclosures, and spoke to Moreau about the issue.

---

[1] We were notified in the appellee's briefing that in 2017, Tesoro changed its name to Andeavor Corporation. Appellant moved in November 2018 to substitute Marathon Petroleum Corporation as the appellee, as Marathon allegedly had acquired all the shares of Andeavor. We agree to substitute Andeavor as the appellee in the caption of this case but see no basis to make Marathon the party. We will, nonetheless, refer to the appellee in the opinion as Tesoro, as it was the name of the party at the time of these events.

No. 17-50927

Wallace was also a sub-certifier of Tesoro's financial statements. In early 2010, Wallace certified that he knew of no reason why the 2009 Form 10-K could not be certified. The filing expressly included the following:

> Federal excise and state motor fuel taxes, which are remitted to governmental agencies through our refining segment and collected from customers in our retail segment, are included in both "Revenues" and "Costs of sales and operating expenses." These taxes, primarily related to sales of gasoline and diesel fuel, totaled $283 million, $278 million and $240 million in 2009, 2008 and 2007, respectively.

Tesoro also disclosed in its 10-K that "[f]ederal and state motor fuel taxes on sales by our retail segment are included in both 'Revenues' and 'Costs of sales and operating expenses.'" Jackson testified that the disclosures included both excise and sales taxes. On March 12, 2010, the day of Wallace's termination, Wallace certified that he was unaware of any "business or financial transaction that may not have been properly authorized, negotiated, or recorded" for 2009.

While Wallace was investigating internal comparative profitability and accounting for taxes, the Tesoro human resources department began investigating Wallace. It found a pattern of unacceptable behavior, including favoritism and fostering a hostile work environment. Tesoro terminated Wallace and asserts it was for his poor performance. Wallace claims he was terminated in retaliation for reporting Tesoro's practice of booking sales taxes as revenues, which he claims was not properly disclosed in Tesoro's public filings.

Wallace brings his claim under the anti-retaliation provision of the Sarbanes-Oxley Act ("SOX"). 18 U.S.C. § 1514A(a). He claims he personally told Moreau that Tesoro "puffed" revenue figures in SEC filings. Tesoro moved for summary judgment. Wallace responded with briefing and a declaration from Douglas Rule. Tesoro moved to strike the declaration. The magistrate judge struck only those portions that it determined were expert testimony, and

3

No. 17-50927

the district court adopted those recommendations.  The magistrate judge also recommended that summary judgment be granted to Tesoro.  The district court did so.  Wallace appeals, claiming error in granting summary judgment and in striking portions of Rule's declaration.

## DISCUSSION

We review the grant of summary judgment *de novo*.  *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006).  All inferences "must be viewed in the light most favorable to the nonmoving party." *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006).  A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

Wallace's retaliation claim is brought under the whistleblower protections of SOX.  Registered companies are prohibited from

> discharg[ing] . . . an employee . . . because of any lawful act done by the employee to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of . . . any rule or regulation of the Securities and Exchange Commission . . . when the information . . . is provided to . . . a person with supervisory authority over the employee.

18 U.S.C. § 1514A(a).  A retaliation claim under that provision requires an employee prove "by a preponderance of the evidence, that (1) he engaged in protected whistleblowing activity, (2) the employer knew that he engaged in the protected activity, (3) he suffered an 'adverse action,' and (4) the protected activity was a 'contributing factor' in the 'adverse action.'" *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 259 (5th Cir. 2014) (footnote omitted) (quoting *Allen v. Admin. Review. Bd.*, 514 F.3d 468, 475-76 (5th Cir. 2008)). Wallace must also show that his belief that Tesoro committed a covered violation was both objectively and subjectively reasonable. *Wallace v. Tesoro Corp.*, 796 F.3d 468, 474-75 (5th Cir. 2015).  "The objective standard examines

4

whether the belief would be held by 'a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee.'" *Id.* (quoting *Allen*, 514 F.3d at 477).

Wallace claims that the covered conduct he reported was that Tesoro reported "puffed" revenue figures "to the SEC and the public." Wallace points to a statement by a "Tesoro pricing official," who "confirmed" that the "misallocations found by Wallace's investigation overstated profits by $30 million." Wallace's claim centers on his purported belief that the inclusion of sales taxes in revenues for the retail segment was not properly disclosed in SEC filings. Wallace acknowledges that excise taxes were disclosed, but he believed Tesoro was not accurately reporting its treatment of sales taxes. Wallace claimed that "revenues were not being recognized appropriately, affected consolidated numbers[,] and were misreported in the 10-K and 10-Q filings . . . . violat[ing] the SEC rules requiring compliance with GAAP, keeping accurate books, maintaining internal controls[,] and filing correct reports."

This case turns on whether Wallace's purported belief that his employer was misreporting its revenue was objectively reasonable in light of the undisputed facts. If Wallace's belief was not objectively reasonable, his SOX retaliation claim fails. *See id.* In answering that question, we must also resolve an evidentiary dispute.

### A. Objective Reasonableness of Wallace's Claimed Belief

We start with examining Wallace's training and experience that forms the basis of his belief. *See id.* Wallace had extensive business experience that included "implementing best business practices," performance and market analysis, oversight of accounting services, asset valuation, and experience with Tesoro's internal accounting system, which Wallace refers to as a "SAP system." As a sub-certifier at Tesoro, Wallace had specific expertise in its SEC

financial reporting practices.  Given Wallace's background and experience with accounting and SEC reporting, he should be capable of understanding disclosures in SEC filings.

We next turn to the facts underlying Wallace's claim.  Wallace testified he reviewed the 2009 10-K, which was filed March 1, 2010, shortly before his termination on March 12, 2010.  As a certifier, he was required to state whether he knew of any reason why the 2009 10-K could not be certified.  Wallace testified that he knew of no reason why the 2009 10-K could not be certified.  Notably, the 2009 10-K included the following language:

> Federal excise and state motor fuel taxes, which are remitted to governmental agencies through our refining segment and collected from customers in our retail segment, are included in both "Revenues" and "Costs of sales and operating expenses." These taxes, primarily related to sales of gasoline and diesel fuel, totaled $283 million . . . in 2009."

When discussing its retail segment in its 2009 10-K, Tesoro also disclosed that "[f]ederal and state motor fuel taxes *on sales* by our retail segment are included in both 'Revenues' and 'Costs of sales and operating expenses'."  Wallace specifically mentioned sales taxes on fuel in Hawaii as an example of sales tax revenues that he believed were improperly accounted.

Wallace attempts to create fact issues on the question of whether his belief in a covered SOX violation was reasonable by pointing to the timing of his certifications, noting that he certified the 2009 10-K, "and did not include the period in 2010 when he discovered and reported his concerns."  He also specifically testified that his certification on the day of his termination applied only to 2009.

Wallace's factual argument fails because the same accounting issues he found in 2010 also existed in 2009.  Wallace specifically blames the "antiquated SAP system" and a "lack of controls on [Tesoro's] transfer prices" for the

inclusion of taxes as revenues and internal profitability reporting issues, which were identified in 2008 and known to Wallace at the end of 2009 or beginning of 2010. That means there is no reasonable dispute that Wallace was aware that the inclusion of sales taxes as revenues would have occurred in 2009 because nothing indicated to Wallace that the procedure for internal revenue reporting changed in the beginning of 2010. Furthermore, a reporting individual who is a sub-certifier with accounting oversight experience should conduct a reasonable investigation to ensure the reasonableness of his conclusion that the public disclosures contained a reporting violation. *See Allen*, 514 F.3d at 479. Had Wallace conducted a limited investigation, he would have determined that the same footnote present in the 2009 10-K was present in the 2008 10-K. A brief look at the retail segment of the 10-K, which Wallace alleges was the source of the sales-taxes-as-revenues problem, would show that Tesoro disclosed that fuel sales taxes were included in revenues.

Jackson also testified that Tesoro's SEC disclosures include sales taxes, not just excise taxes. Wallace attempts to discount the certainty with which Jackson testified, but he does not offer any conflicting evidence on that point other than a portion of Rule's declaration that was struck. Thus, whether there is a dispute of fact turns on whether the district court erred when it struck portions of Rule's declaration.

### B. *Striking of Portions of Douglas Rule's Declaration*

This court reviews evidentiary rulings for abuse of discretion. *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 370 (5th Cir. 2000). "A trial court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Caldwell*, 586 F.3d 338, 341 (5th Cir. 2009).

No. 17-50927

We review only the district court's decision to strike paragraph 22 of Rule's declaration. There Rule opined on the differences between sales and excise taxes and whether Tesoro accurately disclosed sales taxes in its SEC filings. A party is required to disclose the identity of expert witnesses it plans to use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705. FED R. CIV. P. 26(a)(2)(A). In disclosing the identity of the expert witness, a party is also required to submit a written report. *Id.* at 26(a)(2)(B). Wallace does not dispute that he failed to make a timely disclosure of Rule as an expert or provide a report. At issue here is whether paragraph 22 of Rule's declaration constitutes expert or lay opinion testimony.

Lay opinion testimony is limited to that which is "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Wallace argues that Rule's explanation of the difference between excise taxes and sales taxes is based on his perceptions from working at Tesoro for several years. Wallace argues that even if Rule's declaration is based upon "some specialized knowledge, it is admissible so long as the lay witness offers straightforward conclusions from observations informed by his or her experience." *United States v. Sanjar*, 876 F.3d 725, 738 (5th Cir. 2017).

Rule's training, education, and experience included "'refinery economics, strategy management for commercial crude oil, business development,' and . . . 'transfer pric[ing] between operating segments.'" Notably, Rule did not deal explicitly with tax calculations, SEC reporting requirements, or investor relations. We conclude that Rule's declaration as to paragraph 22 could not have been based on his lay experience as a Tesoro employee but rather on specialized accounting knowledge. Rule's opinion on the application of tax accounting definitions to the SEC disclosures is an example of Rule applying

8

No. 17-50927

his "specialized knowledge" to "help the trier of fact . . . understand the evidence." FED. R. EVID. 702(a).

The district court did not abuse its discretion in finding that paragraph 22 of Rule's declaration was impermissible expert testimony.[2]  AFFIRMED.

---

[2] We express no view on the admissibility of any of the remainder of Rule's declaration, as those sections are not applicable to the question of Wallace's reasonable belief.