# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 7, 2023

Lyle W. Cayce
Clerk

No. 23-10104

Darrell Seybold,

*Plaintiff—Appellant*,

*versus*

Charter Communications, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-228

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.
Per Curiam:[*]

This case involves an ex-employee's claim that he was terminated from his job for reporting various instances of alleged securities and shareholder fraud to his supervisors. Because we hold that the ex-employee failed to plausibly plead both his whistleblower claim and his breach of contract claim against his employer, we AFFIRM the judgment of the district court.

## I. Factual and Procedural Background

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-10104

Darrell Seybold worked for Charter Communications, Inc. ("Charter") as a sales manager for eight years[1] before his termination on February 18, 2020. Charter's stated reason for terminating Seybold was his unprofessional conduct and communication. However, Seybold argues that Charter's reasoning was pretextual and that he was in fact fired for reporting Charter's unlawful or unethical corporate behavior.

Four reports form the basis of Seybold's allegations against Charter. The first involved Charter's 2015 policy of retagging circuits to make old Ethernet customers appear new. The second involved a 2019 policy change whereby senior homes were counted as both commercial and residential accounts, resulting in overreporting. The third involved an inflated sales funnel that Seybold believed set an unattainable standard for sales personnel. The fourth involved an error in the calculation of commissions, such that sales personnel like Seybold were underpaid. Seybold alleged that, through each of the actions contained in his reports, Charter engaged in securities fraud and shareholder fraud—in other words, Charter was cooking the books. Seybold asserted that he detailed his findings in the four categories above to his supervisor, the regional vice president, and the group vice president at Charter via email.

After Charter fired him, Seybold filed a Sarbanes-Oxley ("SOX") complaint with the Occupational Safety and Health Administration ("OSHA") on July 29, 2020. Once OSHA dismissed his complaint, Seybold filed suit against Charter for violations of the whistleblower protections contained in the SOX Act and for breach of contract relating to the unpaid commissions.

---

[1] The eight-year employment period from 2012 to 2020 was Seybold's second stint with Charter. Seybold also previously worked for Charter from 2001 to 2003.

No. 23-10104

Charter filed a Rule 12(c) motion for judgment on the pleadings on April 30, 2021. The district court granted Charter's motion as to the breach of contract claim and dismissed that claim with prejudice. The court found that Seybold's contract claim failed under Texas law because a disclaimer in the Commission Plan explicitly stated that the plan was not a contract. As for the SOX claim, the district court noted several deficiencies in Seybold's pleadings regarding the first, second, and fourth elements of his *prima facie* case. In particular, the court directed Seybold's attention to the complaint's lack of detail regarding what Seybold knew to be unlawful at the time he made the four reports and what those reports actually contained. The district court granted Seybold leave to amend his complaint to address these failings.

Seybold filed his first amended complaint on April 1, 2022. Shortly thereafter, Charter filed a Rule 12(b)(6) motion to dismiss, arguing that Seybold failed to cure the deficiencies previously highlighted by the district court. The district court agreed with Charter and dismissed Seybold's SOX claim with prejudice. The district court found that the first amended complaint "provide[d] zero new, meaningful detail" to cure the pleading deficiencies. By "simply add[ing] words without adding meaning," Seybold failed to provide "specificity regarding the report's contents, Seybold's state of mind, and the causal link between the . . . report and Seybold's termination." In sum, the district court found that "Seybold's amended complaint added a host of details surrounding what Charter did wrong, but it failed to sufficiently allege what Seybold actually reported." Because the court also found that Seybold failed to follow prior instructions regarding the errors identified in his complaint, the district court denied Seybold leave to file a second amended complaint.

Seybold timely appealed the dismissal of both the SOX claim and the breach of contract claim.

No. 23-10104

## II. Standards of Review

### a. Federal Rules of Civil Procedure 12(b)(6) and 12(c)

This Court reviews *de novo* the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6). *See Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (cleaned up).

Similarly, "[w]e evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). Thus, this Court reviews a dismissal on the pleadings *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (citation omitted).

### b. Federal Rule of Civil Procedure 15(a)

Whether to allow a party to amend its complaint "is left to the sound discretion of the district court and will only be reversed on appeal when that discretion has been abused." *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).

## III. Analysis

Seybold raises three arguments on appeal: (1) the district court improperly dismissed Seybold's SOX claim under Rule 12(b)(6); (2) the district court improperly dismissed Seybold's breach of contract claim under Rule 12(c); and (3) the district court abused its discretion by denying Seybold leave to file a second amended complaint under Rule 15(a). We address each argument in turn below.

a. Failure to state a SOX claim

Seybold first argues that the district court improperly dismissed his SOX claim for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The SOX Act, "codified at 18 U.S.C. § 1514A, creates a private cause of action for employees of publicly-traded companies who are retaliated against for engaging in certain protected activity." *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475 (5th Cir. 2008). To succeed on a SOX claim, "an employee must prove by a preponderance of the evidence that (1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Id.* at 475–76.

A "protected activity" for SOX purposes includes:

> any lawful act done by the employee to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . .

18 U.S.C. § 1514A(a)(1). "Essentially, the employee has to provide information or assist in an investigation that he reasonably believes relates to one or more of six categories of laws and regulations." *Wallace v. Tesoro Corp.*, 796 F.3d 468, 474 (5th Cir. 2015).

The "protected activity" at the foundation of Seybold's claim against Charter is the filing of the four reports, described above, via email to his supervisors. The district court identified errors with several aspects of this "protected activity": whether Seybold knew he was engaging in protected activity at the time he sent the emails; whether Charter knew Seybold was engaging in protected activity at the relevant time; and whether Seybold pled with sufficient particularity the content of the reports, so as to determine whether they constituted protected activity at all. As Charter explains it, Seybold "failed to allege the substance of what he actually said to Charter," and "he did not allege that—at the time of his reports—he believed Charter's policy violated [the relevant] laws." The district court found that Seybold's first amended complaint failed to cure these errors, and we agree.

With respect to the first three reports, the fatal flaw in Seybold's pleadings is the lack of any concrete detail regarding what Seybold reported to his supervisors and whether he thought the reported conduct was illegal at the time. Seybold attempted to explain why he could not provide the court with physical copies of his emails (in which he allegedly reported the unlawful conduct), but this misses the point: Seybold needed to describe, with particularity, what was contained therein so as to demonstrate that he was engaging in protected activity under SOX at the time the reports were filed. So while providing the emails themselves would perhaps be beneficial, Seybold could have provided the detail requested by the district court without them—he simply did not do so. Instead, he summarized his actions as "reporting," "opposing," and "disputing" certain Charter policies. But this does not show that Seybold held a "reasonable belief that conduct violates" securities

laws; if anything, it expresses mere disagreement with company policy. *See Wallace*, 796 F.3d at 474. Because Seybold did not show what he actually reported to Charter, he could not show that his actions constituted protected activity under SOX, or that Charter believed it to be protected activity. *See Villanueva v. U.S. Dep't of Lab.*, 743 F.3d 103, 110 (5th Cir. 2014) (holding that where plaintiff did not demonstrate he engaged in protected activity, court could not conclude defendant knew he engaged in the same).

With respect to the fourth report regarding unpaid commissions, Seybold was able to provide actual copies of relevant emails, but the emails do not evince any allegation of wrongdoing at all. Instead, Seybold's email highlights a "misapplication" of the Commission Plan that Charter should "recalculate." Rather than showing that he affirmatively communicated potentially illegal actions, the email reflects, at most, a disagreement with a paycheck. Thus, Seybold's vague allegations fall short of our pleading requirements and do not bring his dispute within the scope of SOX's whistleblower protections.

In sum, Seybold did not demonstrate that he actually blew the whistle. Seybold's allegations paint a picture of an employee criticizing internal company policies, not of an employee highlighting potential illegal conduct by his employer. *See, e.g.*, *Day v. Staples, Inc.*, 555 F.3d 42, 58 (1st Cir. 2009) (holding that "complaints about purely internal practices" do not satisfy SOX); *Platone v. U.S. Dep't of Lab.*, 548 F.3d 322, 326 (4th Cir. 2008) (holding that allegations were insufficient where they amount to "little more than alerting . . . management to an internal billing issue"); *Beacom v. Oracle Am., Inc.*, No. CIV. 13-985 DWF/FLN, 2015 WL 2339558, at *4–5 (D. Minn. Mar. 11, 2015), *aff'd*, 825 F.3d 376 (8th Cir. 2016) (holding plaintiff failed to show protected activity under SOX where plaintiff merely complained that sales quota was unattainable). Other than asserting that he complained about four areas of Charter's business, Seybold's pleadings fail to show that he alerted

No. 23-10104

Charter of his belief that its actions were unlawful—not merely "improper" or subject to "opposition" from an employee, but actually *unlawful*. Because Seybold did not demonstrate that he engaged in protected activity, or that Charter believed Seybold was engaging in the same, his SOX claim fails as a matter of law.

### b. Failure to state a breach of contract claim

Seybold next argues that the district court incorrectly dismissed his breach of contract claim for the unpaid commissions. The "contract" underlying Seybold's claim is the Commission Plan. Notably, the Commission Plan itself states that it is not a contract of any kind and emphasizes that the sales participant remains an at-will employee despite his involvement in the Commission Plan. Seybold asserts that under Texas law, an at-will employment relationship is still contractual in nature, and therefore, Charter was obligated to pay the agreed-upon commissions and likewise lacked the discretion to claw back certain advanced commissions. We disagree with Seybold's characterization of the Commission Plan and affirm the district court's finding that the breach of contract claim fails as a matter of law.

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration in original) (citation omitted). It follows that where there is no "valid contract," there can be no breach of contract claim. *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 (5th Cir. 2021) (affirming that in absence of a valid agreement, breach of contract claim fails as a matter of law).

Here, there is no valid contract. The Commission Plan's explicit disclaimer decides this issue for us: it states that "nothing in this Plan shall

8

constitute a contract of employment or contract of any other kind" and explains that the sales participant "will remain at all times employed at the will of Charter." The district court correctly noted that courts find such disclaimers binding and prevent similar commission plans from forming the basis of a breach of contract claim. *See, e.g.*, *Geras v. Int'l Bus. Machines Corp.*, 638 F.3d 1311, 1317 (10th Cir. 2011) (finding no intention to enter enforceable contract based on disclaimer language); *Jensen v. Int'l Bus. Machines Corp.*, 454 F.3d 382, 388 (4th Cir. 2006) (finding that defendant, through clear disclaimer language, "manifested its clear intent to preclude the formation of a contract"); *Oldham v. ORIX Fin. Servs., Inc.*, No. 3:05CV2361 M, 2007 WL 530202, at *3 (N.D. Tex. Feb. 21, 2007) (analyzing similar disclaimer and finding that "the language of the Plan manifested an unambiguous intent to preclude formation of a contract").

Rather than addressing the disclaimer's clear language head-on, Seybold diverts this Court's attention to case law analyzing the contractual nature of at-will employment relationships. But the cases from this circuit that Seybold cites are inapposite because they do not discuss—or involve at all—disclaimers such as the one contained in the Commission Plan here. *See Paniagua v. City of Galveston*, 995 F.2d 1310, 1314 (5th Cir. 1993) (explicitly noting the lack of a disclaimer "to the effect that they do not create a contract or affect legal relations" and therefore not reaching this issue); *Jourdan v. Schenker Int'l, Inc.*, 71 F. App'x 308, 312 (5th Cir. 2003) (addressing at-will employment and the effect of a sales-incentive plan with no disclaimer). Seybold cannot point to any case in which this Court ignored a clear disclaimer, like the one present here, to allow a breach of contract claim to proceed. Based on the explicit language of the Commission Plan's disclaimer, no contract existed as a matter of law, and the district court therefore correctly dismissed Seybold's breach of contract claim for unpaid commissions.

c. Denial of leave to file second amended complaint

Lastly, Seybold argues that the district court abused its discretion in denying his request to file a second amended complaint to cure the deficiencies identified in his first amended complaint. Under Federal Rule of Civil Procedure 15(a), a court "should freely give leave [to amend] when justice to requires." FED. R. CIV. P. 15(a)(2). However, "leave to amend properly may be denied when the party seeking leave has repeatedly failed to cure deficiencies by amendments previously allowed and when amendment would be futile." *U.S. ex rel. Willard*, 336 F.3d at 387.

Here, the district court found that, although it had explicitly pointed out each discrete issue with the original complaint, Seybold failed to cure any of his pleading deficiencies and ultimately ignored the district court's clear instructions. The district court believed that after the showing made in the first amended complaint, giving Seybold a second chance to amend would be futile. We agree and hold that the district court did not abuse its discretion in denying Seybold leave to amend his complaint a second time where such an amendment likely would not have cured the fatal problems in Seybold's case.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.