IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 01-50015
_____

SHIRLEY RAMIREZ,

Plaintiff-Appellant,

versus

LANDRY'S SEAFOOD INN & OYSTER BAR; LANDRY'S SEAFOOD
RESTAURANT,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas, San Antonio

_____

February 4, 2002

Before JOLLY, SMITH and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Shirley Ramirez, a Hispanic woman, has adduced enough evidence for a jury to find that her former employer, Landry's Seafood Inn ("Landry's"), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by discharging her based on her national origin. We therefore reverse the grant of summary judgment by the district court in favor of Landry's and remand for further proceedings.

I

Ramirez was employed as a waitress at Landry's from 1990 until she was discharged in 1995. In December 1995, two managers at Landry's, Carol Cree and Wendi Scarborough, informed general

manager Patrick Richardson –- based on second-hand reports –- that Ramirez planned to stage a walkout en masse in the middle of a shift and had spread an unfounded rumor that a manager had been fired for calling in sick. Ramirez denies planning a massive walkout[1] and denies spreading a rumor. Following a meeting of Landry's managers, Richardson terminated Ramirez on December 9, 1995. A contemporaneous report documenting the termination indicates that Ramirez was fired because: (1) "[s]he has been working behind the scenes attempting to lure fellow employees to leave Landry's" and (2) "she is spreading rumors about a manager being fired for calling in sick."

Ramirez filed a complaint with the EEOC alleging that she was discharged based on her national origin in violation of Title VII. Based on its investigation of Ramirez's allegations, the EEOC issued a right to sue letter stating that it found reasonable cause to believe that Ramirez's discharge was the result of illegal discrimination. In August 1999, Ramirez filed this Title VII action against Landry's. After nine months of discovery, Landry's filed a motion for summary judgment. Accepting the magistrate judge's recommendation, the district court granted Landry's motion in November 2000. Ramirez now appeals.

II

---

[1] According to Ramirez, several employees were contemplating applying for jobs at the Hard Rock Café, and Ramirez merely suggested that they would be more likely to secure positions if they applied as a team.

2

The district court granted summary judgment in favor of Landry's because "Ramirez has wholly failed to present any evidence to support an inference that Landry's stated reasons for her discharge, consisting of behavior admittedly engaged in by Ramirez, were pretextual, i.e., that the reasons were false and that the true reason was discrimination." We review de novo the district court's grant of summary judgment. See Blow v. City of San Antonio, Tex., 236 F.3d 293, 296 (5th Cir. 2001). Summary judgment is appropriate when the record, viewed in the light most favorable to the non-movant, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56.

Landry's concedes that Ramirez has established a *prima facie* case of discriminatory discharge and, as noted above, Landry's has articulated two non-discriminatory reasons for discharging Ramirez. To make a showing of pretext sufficient to submit her case to a jury, Ramirez "must put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates." Wallace v. Methodist Hosp. System, 271 F.3d 212, 220 (5th Cir. 2001) (emphasis added and citations omitted).

In response to the first proffered rationale for her termination, Ramirez points to evidence that a white employee, Cynthiann Rutkowski, engaged in similar actions yet was never

3

disciplined in any way.[2]  Specifically, Ramirez presented sworn statements from two other Landry's employees, Ernest Zavala and Mary Castaneda, that Rutkowski offered to use her connections at Outback Steakhouse to obtain jobs for them and for Ramirez. Ramirez, Zavala, and Castaneda all assert that Richardson was aware of Rutkowski's activities before he fired Ramirez, but Richardson did not take any action against Rutkowski.

We have held that "[w]hen a supervisor of one race treats employees of the same race more favorably than similarly situated employees of another race under circumstances that are essentially identical, a presumption of discriminatory intent is raised." Barnes v. Yellow Freight Indus., 778 F.2d 1096, 1101 (5th Cir. 1985).  Viewing the evidence in the light most favorable to Ramirez, we find that Ramirez has raised a material issue of fact whether a similarly situated white employee was treated more leniently than she.  Rutkowski's actions here were in essence the same as Ramirez's.  Barnes, 778 F.2d at 1101.  Indeed, actually offering jobs with a competitor may be a more serious example of encouraging employees to leave their current jobs than a suggestion that employees apply for jobs elsewhere as a team.[3]

---

[2] Ramirez also contends that the other employees (Mary Castaneda and Jaime Rodman) who were involved in the alleged "conspiracy" were never disciplined, although they engaged in the same conduct as Ramirez.  In view of our ultimate holding, there is no need to address that contention here.

[3] Rutkowski acknowledges that she expressed interest in leaving Landry's, but she denies that she offered jobs at Outback to

4

Landry's argues that Ramirez's conduct is different from Rutkowski's conduct because Ramirez "attempted to facilitate a coordinated departure of Landry's employees." Scarborough, Cree, and Richardson assert that they believed that Ramirez was planning to stage a coordinated walkout during a shift, but the termination report refers only to an attempt to "lure fellow employees to leave Landry's." Although the trial court found immaterial any distinction between luring employees away and staging a coordinated walkout, it is not entirely clear whether the alleged "coordination" was a significant factor in Ramirez's termination. In any event, we are persuaded that Ramirez's conduct is in essence the same as Rutkowski's conduct.

Landry's also argues that it terminated Ramirez in part because she had received two previous disciplinary reports. Rutkowski, by contrast, had not received a disciplinary report. Because company policy allows management to fire any employee who had received two or more warnings, Landry's argues that Ramirez and Rutkowski were not in the same position. This argument fails, however, because Landry's did not rely on Ramirez's disciplinary

_____

Landry's employees. In any event, resolving conflicts in testimony is the exclusive province of the trier of fact and may not be decided at the summary judgment stage. See Dibidale, Inc. v. Am. Bank & Trust Co., 916 F.2d 300, 307-08 (5th Cir. 1990). Similarly, Landry's suggests that Richardson may not have been aware of Rutkowski's activities and may have legitimately perceived that Ramirez's activities were more unusual than they were. As noted earlier, however, Ramirez, Zavala, and Castaneda assert that Richardson had been informed of Rutkowksi's statements. Here again, the jury must resolve any conflicts in testimony.

5

history in the December 9, 1995 report documenting her dismissal.

In sum, we find that Ramirez has raised a genuine issue of material fact whether Landry's used the alleged walkout proposal as a pretext for terminating her based on her national origin.

Landry's second proffered nondiscriminatory reason for terminating Ramirez is that she allegedly spread a false rumor that Lon Letcher, a manager at Landry's, had been fired for calling in sick. Ramirez denies that she spread any such rumor. Landry's argues that, even if Ramirez had not in fact spread the rumor as alleged, Richardson could legitimately terminate her based on his "good faith" belief that she had.[4]

In response, Ramirez argues that there is no evidence outside Richardson's affidavit that anyone actually heard or reported the alleged rumor to Richardson. For example, Richardson asserts that Carol Cree informed him about the alleged rumor, but Cree's affidavit does not mention it. Richardson also refused to provide any details about the alleged rumor when he terminated Ramirez. According to Ramirez, Landry's did not even reveal that the manager in question was Letcher until several years after her termination. Ramirez also asserts that the alleged rumor would have made little

---

[4] See <u>Waggoner v. City of Garland</u>, 987 F.2d 1160, 1165-66 (5th Cir. 1993) ("[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief."); <u>see also</u> <u>Jones v. Flagship Int'l</u>, 793 F.2d 714, 729 (5th Cir. 1987) (holding that a termination decision is not pretextual if the employer "had reasonable grounds [for the decision], or in good faith thought it did").

sense because Letcher was not absent from work and was actually on duty on the day Ramirez was fired. Viewing the record in the light most favorable to Ramirez, we find that Ramirez has created an issue of fact whether the rumor-spreading allegation was an actual reason for Ramirez's termination.

III

In conclusion, we hold that Ramirez presented sufficient evidence refuting each of the proffered nondiscriminatory reasons for her termination to raise a genuine issue of fact whether the reasons were a pretext for discrimination. The district court therefore erred in granting summary judgment on Ramirez's discrimination claim in favor of Landry's. Accordingly, we reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

7