# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 2, 2024

Lyle W. Cayce
Clerk

———————

No. 23-20134

———————

Wapiti Energy, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Clear Spring Property and Casualty Company,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-1192

_____

Before Wiener, Willett, and Douglas, *Circuit Judges*.
Jacques L. Wiener, Jr., *Circuit Judge*:

Commonly embedded in protection and indemnity policies for maritime insurance are "wreck removal clauses" that obligate the insurer to cover wreck removal expenses when the removal of a covered vessel is "compulsory by law." This appeal requires us to further define the contours of the "compulsory by law" standard that we established in *Continental Oil Co. v. Bonanza Corp.*, 706 F.2d 1365, 1372 (5th Cir. 1983).

No. 23-20134

Plaintiff-Appellant Wapiti Energy, L.L.C. ("Wapiti") owned a 155-foot tank barge, the SMI 315, that broke free of its permanent moorings and ran aground in marshland owned by a third party during Hurricane Ida. The vessel was insured under a marine package policy issued by Defendant-Appellee Clear Spring Property and Casualty Company ("Clear Spring"). It provided, inter alia, coverage for wreck removal expenses that are compulsory by law. Following limited discovery, Clear Spring moved for summary judgment, contending that the undisputed facts demonstrated that removal of the SMI 315 was not compulsory by law, so it was not obligated to reimburse the expenses that Wapiti incurred in removing the stranded vessel from the marshland. Because we conclude that removal of the SMI 315 was compelled by the Louisiana possessory action, we REVERSE and REMAND for further proceedings consistent with this opinion.

## I.

The SMI 315 was used by Wapiti as a refueling station (or a "floating gas station") in Plaquemines Parish, Louisiana. It was permanently moored near Myrtle Grove, Louisiana. The marine package policy covering the SMI 315, which was in effect from July 1, 2021, to July 1, 2022, contained two sections: (1) hull and machinery coverage, with a scheduled hull value on the SMI 315 of $350,000 (the "Hull Policy"); and (2) protection and indemnity coverage (the "P&I Policy"), which provided a combined single limit of $1 million per accident or occurrence. The P&I Policy contained a clause (the "Wreck Removal Clause") that covered the "cost or expenses of, or incidental to, the removal of the wreck of the [SMI 315] when such removal is compulsory by law."

Shortly after the insurance coverage year began, Hurricane Ida made landfall in southern Louisiana, causing the SMI 315 to break free of its moorings and drift "some miles away from its berth" until partially running

aground of marshland in Barataria Bay. At the time of its grounding, the SMI 315 was carrying approximately 6,000 barrels of crude oil in its storage tanks. Wapiti subsequently learned of the SMI 315's displacement, contacted Clear Spring, and filed a notice of loss. Clear Spring then dispatched an independent marine surveyor to locate the vessel and assess the damage.

The surveyor found the barge partially aground and partially afloat on Barataria Bay and conducted a preliminary inspection of the vessel, concluding that (1) "[t]here was no physical damage" to the SMI 315, (2) it was "loaded with approximately 6,000 barrels of crude oil," and (3) the costs to salvage the oil and refloat the barge "should not exceed approximately $900,000." Wapiti, in coordination with Clear Spring and the surveyor, then began the process of selecting an independent contractor for the wreck removal project. Thereafter, Wapiti was contacted by ConocoPhillips and informed that it owned the marshland on which the SMI 315 was stranded. Wapiti advised ConocoPhillips of its ongoing efforts to remove the barge from the marshland. At that time, ConocoPhillips simply requested that Wapiti keep it apprised of the progress of the recovery and salvage project.

Wapiti selected a contractor to offload the oil and refloat the barge. That project proceeded without the release of any oil into the waterway or marshland. Thereafter, the SMI 315 was successfully pulled from the marsh and ultimately towed to a slip in Batiste Bay. The whole project cost Wapiti $926,840.32. Following the recovery of the vessel, the parties executed a partial settlement agreement, which involved Clear Spring's payment of $265,000 to Wapiti in satisfaction of coverage under the Hull Policy. Wapiti, however, continued to assert that the expenses it incurred in removing the stranded barge were the liability of Clear Spring, pursuant to the Wreck Removal Clause of the P&I Policy or, alternatively, that policy's Sue and Labor Clause. Clear Spring disagreed, taking the position that no additional coverage was owed under the policy.

No. 23-20134

Litigation ensued. Wapiti asserted claims for breach of contract and violation of the Texas Insurance Code, which culminated in the parties filing cross-motions for summary judgment. The district court ruled in favor of Clear Spring, concluding that removal of the SMI 315 was not compulsory by law and dismissing Wapiti's claims. Wapiti timely appealed.

## II.

This court reviews a grant of summary judgment de novo, applying the same standard as the district court. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017); *Miss. River Basin All. v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin*, 864 F.3d at 328 (citation omitted). All facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings. *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009). The resolution of a genuine issue of material fact "is the exclusive province of the trier of fact and may not be decided at the summary judgment stage." *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n.3 (5th Cir. 2002). "On cross motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Bitco Gen. Ins. Co. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329 (5th Cir. 2022) (quoting *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010)).

The central issue on appeal is whether the district court erred in concluding that, as a matter of law, the removal of the SMI 315 was not "compulsory by law" as that language appears in marine protection and

4

indemnity policies. This is not the first time that we have had to consider the meaning of that phrase. We began to formulate the test for whether a wreck removal is compulsory by law, as that phrase appears in marine protection and indemnity policies, in *Progress Marine, Inc. v. Foremost Insurance Company, Grand Rapids, Michigan*, 642 F.2d 816, 820–21 (5th Cir. 1981). There, we held that the phrase "compulsory by law" is to be interpreted pursuant to its plain meaning and concluded that that the wreck removal at issue there was compulsory because the owner of the vessel faced criminal penalties. *Id.* We departed from the Second Circuit's narrow interpretation of the phrase, which considered wreck removal to be compulsory only when "an express direct order from a governmental body directs removal." *Id.* at 821. But, although we crafted a "more expansive interpretation" of the phrase than had the Second Circuit, *see Grupo Protexa, S.A. v. All Am. Marine Slip*, 954 F.2d 130, 138 (3d Cir. 1992) (Alito, J.), we declined to go so far as "to say that removal occasioned by *any* 'legal obligation' is 'compulsory by law.'" *Progress Marine*, 642 F.2d at 821 (emphasis added).

We did not have occasion to further delineate the contours of the "compulsory by law" standard until our en banc decision in *Continental Oil Company v. Bonanza Corporation*, 706 F.2d 1365 (5th Cir. 1983), when we explained:

> The test we have adopted, like the one formulated in *Progress Marine, makes removal compulsory when a reasonable owner, fully informed, would conclude that failure to remove would likely expose him to liability imposed by law sufficiently great in amount and probability of occurrence to justify the expense of removal.* The compulsion of law is not restricted to a categorical duty, attended by criminal sanctions. It extends to a legal duty imposed either by statute or general maritime law, including those duties for whose non-performance the sanction is payment of damages to persons injured. Even thus interpreted, the policy nonetheless extends only to a duty to remove

"imposed by law." *Such a duty must be present and unconditional, not remote and contingent.*

*Id.* at 1372 (emphasis added) (citation and footnote omitted). This test was succinctly described as a "cost-benefit analysis" by the Third Circuit, a characterization we deem to be accurate. *Grupo Protexa*, 954 F.2d at 138.

Taken together with *Progress Marine*, we have recognized that removal of a wreck is compulsory in the following, admittedly overlapping, instances: (1) criminal sanctions would be imposed for failure to remove; (2) a government order mandates removal; or (3) a cost-benefit analysis conducted by a fully informed, reasonable owner at the time of the incident demonstrates that the amount and likelihood of liability imposed by a failure to remove mandates removal of the wreck. *See Progress Marine*, 642 F.2d at 820-21; *Continental Oil*, 706 F.2d at 1372–73. As with any risk assessment, the elements of probability and proportionality are central considerations in the cost-benefit analysis: "[R]emoval occasioned by a reasonable apprehension of slight consequences for inaction or by an unreasonable apprehension even of grave consequences is not compelled." *Continental Oil*, 706 F.2d at 1370. Thus, the cost-benefit avenue can only compel a vessel owner to remove a wreck when (1) the probability of incurring liability is sufficiently high, and (2) the amount of potential liability for inaction justifies the costs imposed by proactively removing the wrecked vessel. *See id.* at 1370 ("To be compelling, the duty must be clear and the sanctions for its violation both established and sufficiently severe to be impelling, that is[,] to warrant the cost of removal.").

Left unanswered by *Continental Oil*, and unaddressed by the scant caselaw applying the cost-benefit analysis developed in that case, is whether state law can be the source of potential liability sufficient to compel the removal of a wreck. We conclude that it does. This is because, "[a]bsent a

specific and controlling federal rule, cases involving marine insurance contracts are governed by state law." *N. Am. Specialty Ins. Co. v. Debis Fin. Servs. Inc.*, 513 F.3d 466, 470 (5th Cir. 2007); *see also Barrios v. River Ventures, L.L.C.*, No. 21-30431, 2022 WL 1013848, at *3 (5th Cir. Apr. 5, 2022); *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195, 198 (5th Cir. 1985). State law thus supplements the universe of theories of liability that may compel a reasonable vessel owner to remove a wreck. *See Continental Oil*, 706 F.2d at 1373 (holding that the compulsion of law "extends to a legal duty imposed either by statute or general maritime law, including those duties for whose non-performance the sanction is payment of damages to persons injured").

## III.

With those principles in mind, we turn to whether the Louisiana possessory action made removal of the SMI 315 compulsory by law.[1] Wapiti cites to *Terre Aux Boeufs Land Company, Inc. v. J.R. Gray Barge Company*, to argue that removal of the SMI 315 was compelled because, under the possessory action, Wapiti would be required to restore ConocoPhillips to peaceful possession of its property. 803 So. 2d 86 (La. App. Ct. 2001). Here, says Wapiti, that would require removal of the stranded vessel from ConocoPhillips's marshland. Clear Spring, on the other hand, insists that the facts of this case do not support the conclusion that Wapiti faced possessory action liability and that *Terre Aux* itself is inapposite because the court there was not resolving a dispute over wreck removal insurance coverage. In *Terre*

---

[1] "The possessory action is one brought by the possessor or precarious possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted." La. Code Civ. Proc. art. 3655.

*Aux*, a barge broke free from her moorings during Hurricane Georges and was stranded on the plaintiff's marshland property. 803 So. 2d at 88–89. The barge owner "claimed a constructive total loss of the barge . . . was indemnified by its underwriter," and thereafter "abandoned" the vessel. *Id.* at 89. The property owner filed suit to compel removal of the barge, and the trial court granted a preliminary injunction mandating its removal, despite that court's conclusion that the vessel's displacement was caused by an Act of God and thus was not caused by any fault of the vessel owner. *Id.* at 89–90. The appeals court affirmed the issuance of the injunction, but only on the basis that Louisiana's possessory action could operate to require removal of the barge from the property. *Id.* at 96–97. That court expressly concluded that Louisiana tort law did not justify the issuance of an injunction because the vessel owner was not negligent because of the applicability of the Act of God defense. It reasoned that the decision to abandon the vessel on the third party's property was unrelated to the Act of God (Hurricane Georges). *Id.* The vessel owner was therefore required to remove the barge, but the court concluded that damages were not warranted because that "would be inconsistent with maritime principles that require liability for damages to be based on fault." *Id.* at 102.

Here, we agree with Wapiti that the Louisiana possessory action made removal of the SMI 315 compulsory by law. Assessing this at the time of the incident and from the perspective of a fully informed, reasonable owner, as we must, see *Continental Oil*, 706 F.2d at 1372–73, the stranding of the SMI 315 on the property of a third party immediately exposed the vessel owner to at least the cost of the vessel's removal under Louisiana's possessory action. *See Terre Aux*, 803 So. 2d at 96–97. This is because the "presence of the barge" on a third party's land (ConocoPhillips) "qualifie[d] as a 'disturbance in fact' for purposes of La. C.C.P. art. 3659." *Id.* at 97. And, the possessory action entitles the possessor of the affected property to injunctive relief—

here, that would entail removal of the stranded vessel from ConocoPhillips's marshland. *See* La. Code Civ. Proc. art. 3663. Thus, at the time of the incident, the reasonable owner here knew that her barge was stranded on a third party's property and that she therefore faced a high probability of having to comply with an injunction mandating the removal of the SMI 315 from ConocoPhillips's property—a court order not materially different from the types of government mandates we found to be sufficient—but not necessary—to satisfy the "compulsory by law" standard in *Progress Marine* and *Continental Oil*. *See Progress Marine*, 642 F.2d at 821; *Continental Oil*, 706 F.2d at 1377. We think that Wapiti's proactive removal of the vessel from ConocoPhillips's marshland was warranted when, as here, it avoided the cost of litigating the removal of the SMI 315 imposed by a theory—the possessory action—that is established in both Louisiana's jurisprudence and its code of civil procedure. *See Continental Oil*, 706 F.2d at 1377 ("Removal of a wreck is not compulsory by law unless there is a clear legal obligation to remove, imposed by statute or judicial decision, on the party who effects removal."). Under the instant circumstances, Wapiti's obligation to remove the SMI 315 from ConocoPhillips's marshland was neither remote nor contingent under Louisiana's possessory action. Therefore, on this basis, the district court erred in granting summary judgment in favor of Clear Spring.[2]

## IV.

Because the Louisiana possessory action made removal of the SMI 315 compulsory by law, the district court erred in granting summary judgment in Clear Spring's favor. Thus, the judgment of the district court is

---

[2] Given this holding, we need not address Wapiti's alternative arguments for why summary judgment was improper here: (1) the Wreck Act, (2) traditional principals of maritime tort liability, and (3) the Sue and Labor Clause of the P&I Policy.

No. 23-20134

REVERSED, and the case is REMANDED for proceedings consistent with this opinion.