# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2026

Lyle W. Cayce
Clerk

No. 25-10808

Nestor Beltran,

*Plaintiff—Appellant*,

*versus*

Lockheed Martin Corporation,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CV-675

Before Elrod, *Chief Judge*, and Higginbotham and Graves, *Circuit Judges*.

Per Curiam:[*]

Lockheed Martin suspended Nestor Beltran for insubordination in December 2022. The following month, Beltran emailed the director of his department with concerns about internal policy changes and his managers' conduct.[1] In March 2023, Lockheed suspended Beltran for insubordination

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] Beltran's email raises three points: (1) an allegation that his supervisors routinely undermined the efforts of quality inspectors—Beltran's role—to make aircrafts conformant; (2) his disagreement and concern with Lockheed's policy to discontinue

again. Lockheed convened the Disciplinary Review Committee (DRC) after Beltran's second suspension, and the DRC unanimously agreed to terminate his employment in May 2023.

Beltran sued Lockheed, bringing claims for retaliation and discrimination under Title VII and retaliation under the National Defense Authorization Act's (NDAA) whistleblower provision. The district court granted summary judgment in Lockheed's favor on all claims. Beltran appeals only the dismissal of his NDAA retaliation claim. We AFFIRM.

## I

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. "We review a district court's grant of summary judgment de novo." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (internal quotation marks and citation omitted). Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## II

"Congress enacted a broad-based whistleblower protection program as part of the NDAA," *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 354 (5th Cir. 2021), shielding "employee[s] of contractor[s] . . . from being discharged, demoted, or otherwise discriminated against as a reprisal for whistleblowing." *Fuerst v. Hous. Auth. of City of Atl.*, 38 F.4th 860, 869–870 (11th Cir. 2022) (alterations in original) (internal quotation marks

---

AVOs ("Avoid Verbal Order"), a type of written instruction that authorizes employees to do work outside their skill set; and (3) his belief that he was treated unfairly and passed over for advancement due to prejudice.

No. 25-10808

omitted) (quoting 41 U.S.C. § 4712(a)(1)). The NDAA's whistleblower provision covers:

> [An employee who] reasonably believes [his disclosure] is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract.

41 U.S.C. § 4712(a)(1).[2]

Beltran alleges the email he sent to his department director in January 2023 constitutes protected activity under the NDAA and that he was fired in retaliation for whistleblowing. To prevail on his NDAA retaliation claim, Beltran must show (1) he "ma[de] a protected disclosure . . . to a person specified in the statute," (2) he suffered an adverse employment action, and (3) "the protected disclosure was a 'contributing factor'" in the adverse employment action. *DuPage*, 58 F.4th at 350.

If Beltran makes this prima facie showing, Lockheed may avoid liability by producing "clear and convincing evidence[] that it would have taken the same personnel action despite the protected activity." *Monden v.*

---

[2] "The NDAA is a relatively newer statute with scant interpretive case law." *Shea v. Mgmt. & Training Corp.*, 580 F. Supp. 3d 389, 392 n.2 (W.D. Tex. 2022) (internal quotation marks and citation omitted). Accordingly, courts evaluating NDAA retaliation claims often draw upon the analytical frameworks of other federal whistleblower provisions. *See, e.g.*, *id.* at 392–93 (citing *Wallace v. Andeavor Corp.*, 916 F.3d 423, 426–47 (5th Cir. 2019) and *Craine v. Nat'l Sci. Found.*, 687 F. App'x 682, 691 (10th Cir. 2017), which analyze whistleblower-retaliation claims under the Sarbanes-Oxley Act); *Fuerst*, 38 F.4th at 872–73 (citing *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999) and *White v. Dep't of Air Force*, 391 F.3d 1377, 1382 (Fed. Cir. 2004), which analyze whistleblower-retaliation claims under the Whistleblower Protection Act); *DuPage Reg'l Off. of Educ. v. U.S. Dep't of Educ.*, 58 F.4th 326, 351 (7th Cir. 2023) (same, citing *Kewley v. Dep't of Health & Hum. Servs.*, 153 F.3d 1357, 1361–62 (Fed. Cir. 1998) and *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1367 (Fed. Cir. 2012)).

*Consol. Nuclear Sec., L.L.C.*, No. 23-10553, 2024 WL 1007458, at *2 (5th Cir. Mar. 8, 2024) (quoting *Wondercheck v. Maxim Healthcare Servs., Inc.*, 495 F. Supp. 3d 472, 481 (W.D. Tex. 2020)); *see also Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 476 (5th Cir. 2008) (applying this standard in the Sarbanes-Oxley whistleblower context); *DuPage*, 58 F.4th at 350; 41 U.S.C. § 4712(c)(6) (incorporating the burden of proof in 5 U.S.C. § 1221(e)(2), which sets forth an affirmative defense for the employer). To establish this affirmative defense, the employer must present sufficient evidence to "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (internal quotation marks and citation omitted) (explaining civil standard for clear and convincing evidence); *see also Ziparo v. CSX Trans., Inc.*, 160 F.4th 314, 345 (2d Cir. 2025*)* (applying *Colorado*'s clear-and-convincing standard in the whistleblower context). The relevant inquiry "is whether the employer would have retained an otherwise identical employee who had not engaged in the protected activity." *Murray v. UBS Sec., LLC*, 601 U.S. 23, 38 (2024) (internal quotations marks and citation omitted).

## III

Assuming without deciding that Beltran has established his prima facie retaliation claim under the NDAA, we hold that Lockheed has shown it had a non-discriminatory reason for firing Beltran—his repeated insubordination.

Courts utilize the factors set forth in *Carr v. Social Security Administration* to determine whether an employer has established an affirmative defense to an NDAA retaliation claim. 185 F.3d 1318, 1323 (Fed. Cir. 1999); *see, e.g.*, *DuPage*, 58 F.4th at 352. We consider (1) "the strength of the [employer's] evidence in support of its personnel action," (2) "the existence and strength of any motive to retaliate on the part of the [personnel]

who were involved in the decision," and (3) "any evidence that the [employer] takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *DuPage*, 58 F.4th at 352 (alterations in original) (quoting *Carr*, 185 F.3d at 1323); *see also Monden*, 2024 WL 1007458, at *2–3 (applying *Carr* factors in the burden-shifting analysis of an NDAA retaliation claim). And we view the *Carr* factors in the "aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *DuPage*, 58 F.4th at 352 (quoting *Whitmore*, 680 F.3d at 1368); *see also Whitmore*, 680 F.3d at 1374 (stating *Carr* does not impose an affirmative burden on the employer to prove all three of the factors by clear and convincing evidence).

First, the strength of Lockheed's evidence supporting its decision to terminate Beltran is significant. It is undisputed that Beltran refused to comply with his supervisor's direct orders twice in a four-month period and that other employees in his role completed the rejected tasks without controversy. It is also undisputed that Beltran had a lengthy disciplinary record, including harassing employees, violating company policies, and lying to a security officer. Beltran's misconduct persisted over several years despite his familiarity with internal policies, repeated warnings and opportunities to cure from management, and suspensions without pay.

Second, Beltran fails to show the employees involved in his termination harbored any retaliatory motive. Xavier Jefferson, a senior manager of labor and employee relations, investigated Beltran's insubordination in December 2022 and March 2023. He convened the DRC after Beltran's second suspension. Jefferson knew about Beltran's email—the alleged protected activity—because Beltran's director forwarded it to him in January. But Beltran offers no evidence that his email inspired Jefferson to retaliate against him. Jefferson testified that the email did not cause him concern "beyond those things that should be raised to Ethics'

attention and that they should investigate" and that he assumed Beltran's complaints were made in good faith, and Beltran concedes that he has no evidence that Jefferson was upset by the email. Nor does the record suggest anyone on the DRC other than Jefferson knew about Beltran's email. Lockheed offers a more plausible reason for the investigation that led to Beltran's termination—his refusal to follow orders from his manager in March 2023, just four months after he was suspended for the same misconduct.

Finally, Lockheed has taken similar disciplinary actions against non-whistleblowing employees that are similarly situated to Beltran. It is undisputed Lockheed has disciplined and dismissed employees for insubordination in the six years Jefferson has been on the DRC. Ed Bruegger is one example—he held the same role as Beltran, engaged in the same misconduct, and was suspended without pay after his first offense.

Applying the *Carr* factors, we conclude Lockheed has offered evidence sufficient to create "an abiding conviction that the truth of its factual contentions are highly probable," *i.e.*, that it would have fired Beltran after his second instance of insubordination even if he had not sent the email to his department director in January 2023. *Colorado*, 467 U.S. at 316.

* * *

We AFFIRM the district court's order granting summary judgment in Lockheed's favor on Beltran's NDAA retaliation claim.